# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| CHAMPION RETAILCO, LLC<br>12121 Champion Way<br>Cincinnati, OH 45241,<br><br>        Plaintiff,<br><br>v.<br><br>CHARLES PRICE III<br>2526 Millwood Circle Southeast<br>Huntsville, AL 35803,<br><br>        Defendant. | CASE NO.<br><br>**VERIFIED COMPLAINT FOR MONETARY AND INJUNCTIVE RELIEF**<br><br>*JURY DEMAND ENDORSED HEREON* |

Plaintiff Champion Retailco, LLC ("Champion"), by and through the undersigned counsel, for its Verified Complaint for Monetary and Injunctive Relief ("Complaint"), alleges as follows:

## PARTIES

1.      Champion is a Delaware limited liability company with its principal place of business in Hamilton County, Ohio.

2.      Defendant Charles Price III ("Price") is a citizen of the State of Alabama and resides in Madison County, Alabama. Price is a former District Sales Manager for Champion who managed client relationships for Champion. Price is now employed by a competitor of Champion in the same or a similar capacity.

## JURISDICTION AND VENUE

3.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Champion's claim arises under the Defend Trade Secrets Act, 18 U.S.C. § 1832, *et seq*.

4.      This Court also has supplemental subject matter jurisdiction over Champion's state law claims pursuant to 28 U.S.C. § 1367(a).  The state law claims are so related to the federal claim that they form part of the same case or controversy under Article III of the United States Constitution.

5.      This Court has personal jurisdiction over Price pursuant to Ohio Revised Code § 2307.382(A)(4) and (6) because he caused a tortious injury in this state by an act or omission outside this state, and the exercise of personal jurisdiction over Price would not offend traditional notices of fair play and substantial justice.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

7.      This Court also has personal jurisdiction over Price and venue is proper in this Court by virtue of paragraph 26 of the Executive Employment Agreement that Champion and Price executed.  Paragraph 26 of the Executive Employment Agreement provides: "The Parties consent and agree that the state or federal courts located in Hamilton County, Ohio: (i) must be utilized solely and exclusively to hear any such lawsuit arising out of this Agreement for claims not covered by the Agreement to Arbitrate, and (ii) are a proper venue for any such lawsuit and said courts can appropriately exercise personal jurisdiction over the Executive for any such lawsuit."

## FACTS

### A.      About Champion

8.      Champion was established in 1953 in Cincinnati, Ohio.  Champion designs, builds, and installs windows, doors, and sunrooms and also installs roofing and siding on residential homes (the "Champion Services").  Champion maintains operations in twenty-nine (29) states, including Alabama.

9. Champion employs District Sales Managers to recruit, hire, train, and manage sales representatives to drive sales and grow business profits for multiple Champion locations. Among other duties, District Sales Managers are responsible for coaching and motivating sales representatives and other sales staff to achieve peak sales performance; maintaining knowledge of and identifying trends in the in-home sales industry; developing local advertising and marketing efforts to generate sales opportunities; creating positive relationships with customers and employees; and maintaining operational compliance with corporate policies, practices, procedures, and government regulation.

10. So that District Sales Managers can perform their duties, Champion provides District Sales Managers specialized training in the design, use, and operation of the Champion Services; access to Champion's goodwill, business relationships, and contacts with third parties, including without limitation, its customers, potential customers, and employees of those third parties; access to Champion's business, marketing, and sales strategies; and access to information about Champion's methods of operations, compensation plans, and future business plans.

11. Champion also provides District Sales Managers access and training on Champion's confidential information and trade secrets related to the design, development, marketing, sales, and operational strategies and processes of the Champion Services including, but not limited to, information relating its customers (including their contact information and preferences), suppliers, vendors, and employees; advertising and marketing plans; business and financial strategies, plans, budgets, goals, projections, and objectives; research and development activities and initiatives; the strengths and weaknesses of the Champion Services; costs, profit margins, and pricing associated with the Champion Services; sales strategies, including the

manner in which it responds to customer requests and requests for information or requests for proposals; and third-party information considered confidential by its customers, vendors, and suppliers and those entities' customers, vendors, and third-party providers.

12.     Champion has devoted extensive time, money, and other resources to develop the confidential information and trade secrets related to the design, development, marketing, sales, and operational strategies and processes of the Champion Services identified above and such confidential information and trade secrets are not generally known outside Champion.

13.     Champion takes steps reasonable under the circumstances to keep such information confidential by, among other things, having its District Sales Managers and other executive employees with access to such information execute agreements with non-disclosure covenants, advising all employees through policy of the requirements that such information be held confidential, creating password-protected electronically stored information, having independent contractors and other business partners execute non-disclosure agreements or other applicable agreements containing confidentiality protections before sharing such information, and otherwise reasonably controlling access to such information.

14.     Champion receives a substantial economic, financial, and business benefit from the design, development, marketing, sales, and operational strategies and processes of the Champion Services identified above not being publicly available or used by competitors. Accordingly, the above information is a trade secret under 18 U.S.C. § 1839 and Ohio Revised Code § 1333.61 and are hereinafter referred to as Champion's "Trade Secrets."

15.     Given the highly competitive nature of the in-home sales industry, Champion takes such precautions to maintain the secrecy of its Trade Secrets because Champion would suffer irreparable harm if its Trade Secrets were to be obtained by, or used on behalf of, its

4

competitors or if the goodwill and competitive advantage it had built with its customers using the Trade Secrets were to be used by a competitor.

**B.** **Price's Employment with Champion**

16.     On or about December 21, 2020, Champion hired Price in the position of District Sales Manager run its offices in Huntsville and Birmingham Alabama, which covers northern and central Alabama, from Lincoln County, Tennessee south to Cullman County, Alabama and from the Georgia state line west to the Mississippi state line.

17.     Incident to his employment, Price executed an Executive Employment Agreement (his "Agreement"), a true and accurate copy of which is attached hereto as **Exhibit A**.

18.     In his Agreement, Price acknowledges that he entered into the Agreement in consideration for his employment with Champion and the compensation and benefits associated with that employment and for Champion's promise to provide and the actual provision of Champion's Trade Secrets.  (Ex. A.)

19.     The Agreement contains certain non-disclosure, non-competition, and non-solicitation restrictive covenants which Price acknowledges are reasonable in scope, territory, and duration; designed to eliminate unfair competition; do not stifle his inherent skill and experience or prevent him from obtaining gainful employment; are fully required to protect Champion's legitimate business interests; and do not confer a benefit upon Champion disproportionate to his detriment.  (Ex. A.)

20.     Section 8 of the Agreement contains a definition of Champion's confidential information, including the Trade Secrets.  In Section 8, Price acknowledges that the "success of the Company and each of its employees is directly predicated on the protection of its knowledge and information," including the Trade Secrets.  In Section 8, Price further acknowledges that

Champion's confidential information, including the Trade Secrets, "is highly valuable and provides a competitive advantage to the Company" and that, "given the United States market in which the Company competes, confidentiality of the Information is necessary without regard to any geographic area." (Ex. A.)

21.     Section 9 of the Agreement contains a non-disclosure provision, which prohibits Price from disclosing or using Champion's Trade Secrets except as authorized by Champion or in the course of his responsibilities at Champion.   Specifically, the non-disclosure provision provides, in pertinent part:

> **NON-DISCLOSURE AND RETURN OF INFORMATION**.   Both during and after Executive's employment with the Company … he agrees to retain the Information in absolute confidence and not to use or permit access to or disclose the Information to any person or organization, except as required for the Executive to perform his job with the Company. Accordingly, he shall not (a) use or disclose such Information directly or indirectly, to or for the benefit of any person or organization not authorized by the Company to receive or benefit from such Information; [or] (b) accept or continue employment with, perform services for, or otherwise engage in activities as a self-employed person, for himself or another person or entity where any part of the duties of such employment or self-employment are such that he could reasonably be induced or required to reveal, base judgments upon, or otherwise disclose or use the Information …. (Ex. A.)

22.     Section 10 of the Agreement contains a non-competition provision, which prohibits Price, for a period of twelve (12) months following the separation of his employment for any reason from, among other things being employed by or engaging in any business activity with a competitor of Champion's if such employment would involve Price (1) selling or attempting to sell, or assisting in the sale or attempted sale of, or providing or performing management functions, relating to any services or products similar to the Champion Services with which Price had any involvement in or possessed Trade Secrets about during his

employment, or (2) performing services that were similar to any services that Price provided to

Champion. Specifically, the non-competition provision provides, in pertinent part:

> **NON-COMPETITION**. Executive recognizes the Company's need to prevent unfair competition and to protect the Company's legitimate business interests. Accordingly, Executive agrees that, during Executive's employment and **for a period of 12 months (each month representing 30 calendar days)** following Executive termination (for any reason), whether voluntary or involuntary, Executive will not accept employment in or engage in any business activity (whether as a principal, partner, joint venturer, agent, employee, salesperson, consultant, independent contractor, volunteer, director, or officer) with a "Competitor" of the Company where such employment or business activity would involve Executive:
>
> (a) providing, selling or attempting to sell, or assisting in the sale or attempted sale of, or providing or performing management functions, relating to any services or products similar to those services or products with which Executive had any involvement or Information during Executive's employment with the Company (including any products or services being researched or developed by the Company during Executive's employment with the Company); or
>
> (b) providing or performing services that are similar to any services that Executive provided to or performed for the Company during Executive's employment with the Company.
> …
>
> For purposes of this Agreement, a "Competitor" is any business or entity that, at any time during the 12 months period (defined above) following Executive's termination (for any reason), whether voluntary or involuntary, from the Company, provides or seeks to provide products or services that compete with the products or services of the Company, including, without limitation, any company or business that installs windows, doors, sunrooms, roofing, and/or siding. This provision includes those services or products being researched or developed by the Company during Executive's employment.
>
> This restriction will be limited to the geographical area where the Company is doing business, the geographic area where the Company markets its products and/or services at the time of termination of Executive's employment, and the geographic area where the Company had a documented plan in place (on or before Executive's termination date) to commence conducting business in that same geographic area. (Ex. A; emphasis in original.)

23.     Section 11 of the Agreement contains a non-solicitation provision that prohibits Price during his employment and for a period of twenty-four (24) months following the separation of his employment for any reason from, directly or indirectly, for the purpose of selling a competitor's product or diverting business from Champion, communicating with (1) any of Champion's customers from which Champion generated business during the twenty-four (24) months immediately preceding his separation from employment; and (2) any prospective customers known to Price during the twenty-four (24) months immediately preceding his separation from employment.  Specifically, the customer non-solicitation provision provides:

> **NON-SOLICITATION OF CURRENT AND PROSPECTIVE CUSTOMERS**.  The Company's business relationships with its customers have been developed through significant effort and often over a period of many years and such customers are vital to the Company's success.  Therefore, Executive agrees that the Company's communications, relationships, and business dealings with its customers through its employees are not only protected as part of its Information restrictions (see Sections 8 and 9), but also deserves protection in a manner separate from the noncompetition restrictions set forth in Section 10 above.  Accordingly, during Executive's employment and **for a period of 24 months (each month representing 30 calendar days)** following Executive's termination (for any reason), whether voluntary or involuntary, from the Company (defined above in Section 8), Executive will not directly or indirectly, through any person or entity, for the purpose or intention of attempting to sell or selling any Competitor's products or services or attempting to divert or diverting business away from the Company, communicate with: (i) any of the Company's customers from which the Company generated revenue during the 24 months preceding Executive's termination; or (ii) any prospective customers known to Executive during the 24 months prior to Executive's termination. Executive also shall not, directly or indirectly, accept any such business from said customer or prospective customer, whether or not solicited by him. (Ex. A; emphasis in original.)

24.     Section 12 of the Agreement contains a non-solicitation provision that prohibits Price during his employment and for a period of twenty-four (24) months following the separation of his employment for any reason from, directly or indirectly, from soliciting any

employee of Champion to terminate employment with Champion or work for a competitor of

Champion.  Specifically, the employee non-solicitation provision provides:

> **<u>NON-SOLICITATION/HIRING OF EMPLOYEES</u>**.  Executive will not, directly or indirectly, attempt to or actually induce, persuade, or entice any current or former Company employee, at any time, to violate any of such person's non-compete and/or non-solicitation and/or non-disclosure and/or non-disparagement agreement(s) with the Company (defined above in Section 8).  Additionally, Executive will not, directly or indirectly, **for a period of 24 months (each month representing 30 calendar days)** following his termination (for any reason), whether voluntary or involuntary, from the Company: (a) communicate with any current or former Company employee concerning employment opportunities with a Competitor; (b) attempt to or actually induce, persuade, or entice any Company employee to terminate such person's employment relationship with the Company, whether or not such person's new employment would be with a Competitor or; and/or (c) employ or assist in employing a current or former Company employee in any capacity for his own competing business or on behalf of any Competitor.  (Ex. A; emphasis in original.)

25.    Section 16 of the Agreement contains a remedies provision, which provides that

the foregoing non-disclosure, non-competition, and non-solicitation provisions are reasonable

and necessary to protect Champion's legitimate business interests and that, in the event of a

breach or threatened breach of the Agreement, Champion shall be entitled to immediate

injunctive relief in addition to all other legal and equitable remedies that Champion may have.

Specifically, the remedies provision provides, in pertinent part:

> Based upon his executive position and the Information he has received and will receive or have access to, Executive further agrees that any breach of the covenant not to compete and/or non-solicitation covenants described herein would result in the inevitable disclosure of the Company's confidential, proprietary, and trade secret Information.  Executive therefore agrees that the Company, in addition to any other rights and remedies available to it, shall be entitled to obtain an immediate injunction, whether temporary, preliminary, or permanent, in the event of any such breach or threatened breach by Executive.  (Ex. A.)

26.     Section 16 of the Agreement further provides that the temporal limitations periods for the restrictive covenants shall be tolled while Price is in breach of the Agreement so that Champion may receive the full benefit of his restrictive covenants.  (Ex. A.)

27.     Section 16 of the Agreement further provides that if any action occurs to enforce the terms of the Agreement, and Champion prevails, then Price agrees to pay Champion for its reasonable attorneys' fees and costs incurred.  Specifically, the fee-shifting provision provides:

> The Company also shall be entitled to reasonable attorneys' fees and court costs incurred in any such action which results in: (a) the enforcement of any provision or section of this Agreement against Executive and to the Company's benefit; or (b) an award of any damages to the Company.  (Ex. A.)

28.     Section 22 of the Agreement provides that it shall be governed by and construed in accordance with the laws of the State of Delaware.  (Ex. A.)

29.     During Price's employment, Champion provided Price with extensive training in and knowledge of its Trade Secrets related to the design, development, marketing, sales, and operational strategies and processes of the Champion Services.  Price used the Trade Secrets to manage the sales staff; develop his knowledge of and identify trends in the in-home sales industry; develop local advertising and marketing efforts to generate sales opportunities; and create positive relationships with Champion's customers and employees.

30.     On or about May 9, 2022, Price voluntarily resigned his employment with Champion.

## C.     Price Unfairly Competes with Champion and Misappropriates its Trade Secrets

31.     On or about October 2022, Champion learned that Price became employed or otherwise engaged in a sales capacity with EcoView Windows & Doors of North Alabama ("EcoView") in Huntsville, Alabama.

32.     As made clear by EcoView's website[1], EcoView markets, sells, and installs windows and doors that directly compete with the Champion Services:



## About Us

Are you ready for an experience in home improvement like never before? For the last 36 years, EcoView Windows & Doors has been serving Alabama homeowners with exceptional customer service, high-quality products, and flawless renovations. We've earned a solid reputation as one of the leading installation companies in the area, with a comprehensive menu of exterior remodeling services, including:



**Rick Joyner**
Owner

EcoView Windows &
Doors of North Alabama
3411 B Highway 53
Huntsville, AL 35806
Get Directions

**Hours**
Mon-Fri 9-5

**(256) 242-0254**

**Products We Offer**
Entry and Patio Doors
Impact Windows
Vinyl Windows
Energy Efficient Windows
Replacement Windows

- **Replacement Doors:** Our experienced door installers will help you customize the perfect fiberglass or steel door model according to your preferences.
- **Replacement Windows:** Whether you're adding a beautiful bay window to your living room or slider windows upstairs, our replacement window installers will help you make the right decision.

33.     Since becoming employed or otherwise engaged by EcoView, Price has sold and attempted to sell, or otherwise assisted in the sale or attempted sale of products offered by EcoView that directly compete with the Champion Services that Price had involvement in and possessed Trade Secrets about during his employment.

34.     Since becoming employed or otherwise engaged by EcoView, Price also has performed services on behalf of EcoView that are similar to the job duties Price performed as a District Sales Manager for Champion.

---

[1]     https://www.ecoviewwindows.com/locator/19102.17882.ecoview-windows-doors-of-north-alabama/ (last visited on January 22, 2023).

11

35.     For example, in October 2022, a Champion sales representative was attempting to sell the Champion Services at a potential customer's home in Albertville, Alabama, when Price arrived unannounced and unscheduled at the customer's home to sell windows on behalf of EcoView.   After speaking with the Champion sales representative, Price told the sales representative that he would return to the customer's home the next day to make his pitch.  The prospective customer subsequently informed the Champion sales representative that he had decided to purchase products from a competitor.

36.     Price also sold windows and doors on behalf of EcoView to a consumer in Alabama in direct competition with Champion.  The consumer who purchased the windows and doors later provided a five-star review on EcoView's website describing of Price's unfair competition on behalf of EcoView:



37.     As such, Price has breached the non-competition provision in his Agreement.

38.     Since becoming employed or otherwise engaged by EcoView, Price also has, directly or indirectly, solicited Champion employees who reported to him to resign their employment with Champion to work for EcoView.

39.     Beginning in December 2022, Price has contacted at least five employees on multiple occasions from the Champion's offices in Huntsville and Birmingham, Alabama, including one sales representative from the Huntsville office who resigned in January 2023 to work for EcoView, a second sales representative from the Huntsville office who resigned in January 2023 but refused to say where he was going to work, a sales representative from the Birmingham office who remains employed with Champion despite Price's solicitation, a measure technician from the Huntsville office who remains employed with Champion, and an installation supervisor from Huntsville with whom Price spoke with about other measure technicians and installers employed by Champion.

40.     Beginning in 2022 and continuing thereafter, Price has disclosed Champion's Trade Secrets, including its business development plans and strategies, marketing plans and strategies, pricing and margin information, employee information, and the strengths and weaknesses of the Champion Services to EcoView so that he and EcoView could use such Trade Secrets to expand EcoView's business in Alabama.

**D.    Champion Demands Price to Cease and Desist from his Unfair Competitive Activities and Trade Secret Misappropriation**

41.     On October 14, 2022, Champion sent Price a letter via Federal Express demanding that Price resign from his employment with EcoView in breach of the Agreement and cease and desist from otherwise violating the non-solicitation provisions of the Agreement.  A true and accurate copy of the October 14-letter is attached hereto as **Exhibit B**.  Price did not respond to the October 14-letter.

42.     Despite the October 14-letter, Price continued to be employed or otherwise engaged by EcoView, to solicit Champion's employees to work for EcoView, and to

misappropriate, disclose, and use Champion's Trade Secrets, in breach of his post-employment obligations in the Agreement.

43.     On January 6, 2023, Champion, through counsel, sent Price a second letter via Federal Express again demanding that Price resign from his employment with EcoView and cease and desist from soliciting Champion's employees in breach of the Agreement. Specifically, Champion warned: "Champion advised you in that [October 14] letter that if you did not resign, it would seek to pursue legal action against you.  We are sending you this letter as a final warning that if you do not immediately resign, Champion will pursue that legal action." Champion sent a carbon copy of the January 6-letter to Rick Joyner, President of EcoView.  A true and accurate copy of the January 6-letter is attached hereto as **Exhibit C**.

44.     To date, Champion has not received a response to its January 6-letter from any of its recipients.

45.     Despite these notices, Price remains employed or otherwise engaged by EcoView in breach of his post-employment obligations to Champion, and given his similar responsibilities to EcoView, Price will continue to inevitably use and disclose Champion's Trade Secrets.

46.     Price's wrongful activities are causing Champion to suffer immediate and irreparable harm, including the loss of its Trade Secrets, goodwill, competitive advantage, and its relationships with its customers, suppliers, and employees.  Unless injunctive relief is entered precluding Price from working for EcoView in competition with Champion, soliciting, interfering with, or entering into contracts with Champion's customers, prospective customers, suppliers, or employees, or disclosing or using Champion's Trade Secrets, Price will inevitably use and disclose Champion's Trade Secrets and unfairly compete with Champion.

47.     Damages caused by Price's actions, as described herein, are extremely difficult to ascertain in that it is impossible to determine the full value of the loss of Champion's Trade Secrets, goodwill, competitive advantage, and its relationships with its customers, suppliers, and employees.

## CAUSES OF ACTION

### COUNT ONE
### Misappropriation of Trade Secrets
### Defend Trade Secrets Act of 2016 (the "DTSA")–18 U.S.C. § 1832, *et seq.*

48.     Champion hereby incorporates by reference its statements and allegations previously set forth in its Complaint as if fully rewritten herein.

49.     Champion has devoted extensive time, money, and other resources to develop trade secrets related to the design, development, marketing, sales, and operational strategies and processes of the Champion Services that is intended for use or sold by Champion through interstate commerce.

50.     Champion's trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

51.     Champion takes reasonable steps to protect the secrecy of Champion's trade secrets, including having its District Sales Managers and other executive employees with access to such information execute agreements with non-disclosure covenants, advising all employees through policy of the requirements that such information be held confidential, creating password-protected electronically stored information, having independent contractors and other business partners execute non-disclosure agreements or other applicable agreements containing

confidentiality protections before sharing such information, and otherwise reasonably controlling access to such information.

52.    Price possesses trade secrets belonging to Champion including, but not limited to, its Trade Secrets by virtue of his employment with Champion.

53.    During his employment with EcoView, Price has misappropriated, used, and disclosed and is continuing to use and disclose Champion's trade secrets, including the Trade Secrets, without authorization and in breach of his contractual obligations to Champion.

54.    The actions of Price set forth herein constitute the threatened and actual misappropriation of trade secrets in violation of the DTSA, 18 U.S.C. § 1832.

55.    Injunctive relief is necessary to prevent the actual or threatened misappropriation of Champion's trade secrets by Price under the DTSA, pursuant to 18 U.S.C. § 1836(b)(3)(A).

56.    Champion has sustained actual damages as a direct and proximate result of Price's misappropriation of its trade secrets and Champion is entitled to an award for damages under the DTSA, pursuant to 18 U.S.C. § 1836(b)(3)(B).

57.    Price's misappropriation was intentional, willful, and malicious, thereby entitling Champion to an award of exemplary damages under the DTSA, pursuant to 18 U.S.C. § 1836(b)(3)(C).

**COUNT TWO**
**Misappropriation of Trade Secrets**
**Ohio Uniform Trade Secrets Act (the "<u>OUTSA</u>")–Ohio Revised Code § 1331.61**

58.    Champion hereby incorporates by reference its statements and allegations previously set forth in its Complaint as if fully rewritten herein.

59.     Champion has devoted extensive time, money, and other resources to develop trade secrets related to the design, development, marketing, sales, and operational strategies and processes of the Champion Services.

60.     Champion's trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

61.     Champion takes reasonable steps to protect the secrecy of Champion's trade secrets, as described herein.

62.     Price possesses trade secrets belonging to Champion including, but not limited to, its Trade Secrets by virtue of Price's employment with Champion.

63.     Price misappropriated Champion's trade secrets without Champion's authorization with the intent to use such trade secrets on behalf of EcoView and has disclosed and used such trade secrets on behalf of EcoView to compete with Champion.

64.     Price's misappropriation, disclosure, and use of Champion's trade secrets was done willfully and maliciously.

65.      The ongoing nature of Price's role with Champion makes the risk of his further disclosure and use of Champion's trade secrets on his and EcoView's behalf inevitable.

66.     Because the ongoing nature of Price's activities with EcoView will make disclosure of Champion's trade secrets inevitable, the continued business activities of Price on behalf of EcoView constitute imminent, immediate, and irreparable harm to Champion.

67.     Price's actions constitute misappropriation of trade secrets, and Champion is entitled to injunctive relief under the OUTSA to protect its trade secrets.

68.     The damage that Price has caused Champion by his misappropriation of Champion's trade secrets will be difficult, if not impossible, to ascertain.  In any event, the damage to Champion as a result of Price's misappropriation exceeds Seventy-Five Thousand Dollars ($75,000).

## COUNT THREE
### Breach of Contract

69.     Champion hereby incorporates by reference its statements and allegations previously set forth in its Complaint as if fully rewritten herein.

70.     Champion and Price executed the Agreement, which is valid and enforceable.

71.     Champion has performed its obligations under the Agreement by, among other things, employing Price and disclosing to and training Price on Champion's Trade Secrets.

72.     Price has breached (and continues breaching) the non-disclosure provision contained in Section 9 of his Agreement by misappropriating, disclosing, and using, without authorization, Champion's Trade Secrets on behalf of EcoView and in competition with Champion.

73.     During the twelve (12) month period following his separation from Champion, Price breached the non-competition provision contained in Section 10 of his Agreement by being employed by or engaging in business activities with EcoView, a direct competitor of Champion, and selling or attempting to sell competitive products on behalf of EcoView, providing or performing management functions on behalf of EcoView, and performing services for EcoView that are similar to the services that Price provided to Champion.

74.     During the twenty-four (24) month period following his separation from Champion, Price breached the non-solicitation provision contained in Section 12 of his

Agreement by, directly or indirectly, soliciting employees of Champion to terminate employment with Champion and to work for EcoView, a competitor of Champion.

75.     The non-disclosure, non-competition, and non-solicitation provisions in the Agreement are reasonable in scope and serve to protect Champion's Trade Secrets, goodwill, competitive advantage, and its relationships with customers, suppliers, and employees. Enforcement of the Agreement will not injure the public in any respect.

76.     Champion has suffered damages as a result of Price's contractual breaches.

77.     Unless restrained, enjoined, and ordered to specifically abide by his non-disclosure, non-competition, and non-solicitation obligations under the Agreement by order of this Court, Price will persist in his breach of contract, thereby causing imminent, immediate, and irreparable damage.

78.     Champion has no adequate remedy at law as the value of Champion's Trade Secrets, goodwill, competitive advantage, and its relationships with customers, suppliers, and employees presently being lost, or yet to be lost, due to Price's continuing contractual breaches will be difficult, if not impossible, to ascertain.  In any event, the damage to Champion as a result of Price's contractual breaches exceeds Seventy-Five Thousand Dollars ($75,000).

**WHEREFORE**, Champion demands judgment as follows:

A.      With respect to Count One, that a monetary judgment be entered against Price and in favor of Champion in an amount equal to all damages proved at trial and exemplary damages, and that Price be preliminarily and permanently enjoined from using or disclosing Champion's trade secrets, including the Trade Secrets, and to return Champion's trade secrets to Champion.

B.      With respect to Count Two, that a monetary judgment be entered against Price and in favor of Champion in an amount equal to all damages proved at trial and exemplary

damages, and that Price be preliminarily and permanently enjoined from using or disclosing Champion's trade secrets, including the Trade Secrets, engaging in any business activity which would inevitably lead to the use or disclosure of Champion's trade secrets, including the Trade Secrets, and to return Champion's trade secrets to Champion.

C.     With respect to Count Three, Champion prays that a monetary judgment be entered against Price and in favor of Champion in an amount equal to all damages proved at trial, including attorneys' fees, costs, and necessary disbursements pursuant to Section 16 of the Agreement, and that Price be preliminarily and permanently enjoined from: (i) using or disclosing Champion's confidential information, including its Trade Secrets, (ii) participating or engaging in, as an owner, partner, shareholder, employee, officer, director, independent contractor, consultant, advisor, or rendering services to an entity which is competitive with the business conducted by Champion, (iii) diverting, soliciting, interfering with, or entering into a contract with Champion's customers from which Champion generated business during the twenty-four (24) months immediately preceding Price's separation from employment or from any prospective customers of Champion known to Price during the twenty-four (24) months immediately preceding his separation from employment; and (iv) employing or soliciting for employment any Champion employees to compete with Champion or inducing any Champion employee to terminate the employee's relationship with Champion.

D.     That Champion be awarded its costs and attorneys' fees as provided in the Agreement and by operation of law.

E.     Such further and additional relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Joseph N. Gross*
Joseph N. Gross, Trial Attorney
Bar Number 0056241
Richard E. Hepp
Bar Number 0090448
Alexandria A. Gardella
Bar Number 0100000
Benesch, Friedlander, Coplan & Aronoff LLP
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Telephone:  216.363.4500
Facsimile:  216.363.4588
Email:  jgross@beneschlaw.com
          rhepp@beneschlaw.com
          agardella@beneschlaw.com

*Attorneys for Plaintiff Champion Retailco, LLC*

## JURY DEMAND

Plaintiff Champion Retailco, LLC, by and through counsel, hereby demands a jury trial on all issues so triable, by the maximum number of jurors permitted by law.

*/s/ Joseph N. Gross*
Joseph N. Gross, Trial Attorney
Bar Number 0056241
*One of the Attorneys for Plaintiff*
*Champion Retailco, LLC*

21

20744793

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| CHAMPION RETAILCO, LLC, | ) | CASE NO. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CHARLES PRICE III, | ) | **VERIFICATION** |
| | ) | |
| Defendant. | ) | |

Pursuant to 28 U.S.C. § 1746, I, Victor Yanev, declare under penalty of perjury that the following statements are true and correct:

1.     I am the Executive Vice President for Champion Retailco, LLC ("Champion"), and I have been authorized to make this verification on behalf of Champion.

2.     I have read Champion's Verified Complaint for Monetary and Injunctive Relief (the "Complaint") and have personal knowledge of the contents thereof.

3.     I declare that the factual allegations contained in the Complaint are true and correct as I verily believe.

FURTHER DECLARANT SAYETH NAUGHT.

Date: 1/27/23

VICTOR YANEV

20770638 v1